IN THE

# SUPREME JUDICIAL COURT

FOR

THE COUNTY OF YORK, APRIL TERM, 1833.

10  113
90  124

## SHAW *vs.* WISE.

Under a sale on execution, of a debtor's " estate, right, title and interest, by " virtue of a bond or contract in writing," for the " conveyance of real " estate," in pursuance of the provisions of *stat.* of 1829, *ch.* 431, the purchaser does not acquire a *seizin* of such real estate, so as to enable him to maintain a *writ of entry*, even against a mere stranger to the title.

Such bond or obligation is a contract merely *personal*, and the " estate, right, " title and interest" accruing under it a merely *personal* right.

THIS was an action of entry upon disseizin, and was tried upon the general issue before *Parris J.* in this County, *September* term, 1832. To maintain the action the plaintiff read in evidence the record of a judgment in his favour against one *Robert Tripp*, recovered *May*, 1829, founded on a demand due in 1826; — and an execution issued on said judgment on which all the equitable right which said *Tripp* had to the demanded premises, by virtue of a bond or instrument in writing, for a deed from one *Benjamin Stanley*, was sold to the plaintiff, *July* 25, 1829, at a regular public sale by a deputy sheriff, the same having been attached on the original writ, *March* 21, 1829. The plaintiff also introduced said *Stanley* to prove that on *Dec.*

3, 1825, he gave *Tripp* an obligation for the conveyance of the demanded premises to him in fee, on the payment of $300, in semi-annual payments of $37,50 each; — that *Tripp* entered into the possession of the premises, and that the payments were regularly made by him or by the defendant with *Tripp's* money, until *March* 11, 1829, when by arrangement between *Tripp* and *Wise*, the bond was given up to *Stanley* or destroyed in his presence, *Stanley* giving a deed of warranty of the demanded premises to the defendant, taking the defendant's notes for $113, the balance due, which was subsequently paid by the defendant with money belonging to *Tripp*; — and that this arrangement was made by both *Tripp* and the defendant for the purpose of protecting the property from attachment by *Tripp's* creditors, and securing it for his benefit, he being in insolvent circumstances.

*Stanley* was objected to by the defendant's counsel, but was admitted.

The defendant claimed by virtue of *Stanley's* deed of *March* 11, 1829, and contended that the plaintiff was not entitled to recover even if *Stanley* was legally admissible as a witness, and the facts in the case were, as alleged to be, by the plaintiff.

But for the purpose of having the facts settled, the presiding Judge ruled otherwise *pro forma*, and directed the jury, that if they believed that a bond was given as testified; — that *Tripp* entered, and held under the bond; — that the whole consideration was paid by *Tripp* or with his money; — and that *Wise* took the deed in his name for the purpose of defrauding the creditors of *Tripp*, and at the time of taking this deed knew that the bond was given up to *Stanley* in furtherance of that object, that their verdict should be for the plaintiff; and they found accordingly, subject to the opinion of the whole Court upon the correctness of these instructions.

*Hussey*, for the defendant, made the following points.

1. *Tripp* had at no time a legal title in the demanded premises. — No present interest in an estate passes to an obligee by virtue merely of a bond for the conveyance of such estate. *Proprs. of No. 6 v. McFarland*, 12 *Mass.* 325. Our *statute* does not extend the rights under the bond.

2. But if otherwise, yet the giving up or cancelling of the bond, revested the title in *Stanley*; especially as this was prior to the plaintiff's attachment.

3. If the transaction between *Wise, Tripp,* and *Stanley,* was fraudulent, as alleged by the plaintiff, then he should have taken the land by *extent* and *appraisement,* instead of attempting to sell a supposed right in equity. *Bullard v. Hinkley,* 6 *Greenl.* 289; *Russell v. Lewis,* 2 *Pick.* 508; *Foster v. Mellen,* 10 *Mass.* 421.

4. If *Tripp* had an equitable interest in the land, and the sale thereof was in pursuance of law, still a *writ of entry* cannot be maintained by the purchaser of such interest. *Doe, ex dem. Bowerman v. Sybourn,* 7 *Term R.* 2; *Goodtitle, ex dem. Jones v. Jones & al.* 7 *Term R.* 47; *Doe, ex dem. Costa v. Wharton & al.* 8 *Term R.* 2; *Roe v. Lowe,* 1 *H. Blk. Rep.* 446; *Russell v. Lewis,* 2 *Pick.* 508; *Pritchard v. Brown,* 4 *N. H. Rep.* 397; *Ayer v. Bartlett,* 6 *Pick.* 71; *Poignard v. Smith,* 6 *Pick.* 172; *Walker v. Farris,* 5 *Johns. R.* 395; *Hill v. Payson,* 3 *Mass.* 559; 4 *Dane's Abr. ch.* 112, sec. 5; 10 *Johns. R.* 480; 4 *Dane's Abr. ch.* 114, sec. 3.

5. *Stanley* ought not to have been admitted as a witness, even if he had no interest in the event of the suit, as his testimony went directly to impeach his own conveyance. *Walton v. Shelley,* 1 *Term R.* 296; *North Hampton Bank v. Whiting,* 12 *Mass.* 104; *Loker v. Haynes,* 11 *Mass.* 498; *Storer v. Batson,* 8 *Mass.* 431; *Churchill v. Suter,* 4 *Mass.* 156; *Bartlett v. Delpratt & al.* 4 *Mass.* 702; *Clark v. Wait,* 12 *Mass.* 439; *Kimball v. Morrill,* 4 *Greenl.* 368; *Richardson v. Field,* 6 *Greenl.* 303.

But *Stanley* was directly interested, and was therefore inadmissible. If the deed to *Wise* be void, then the attachment of *Stanley's* creditors would hold, and the estate would go to pay his debts.

The testimony of *Stanley* should also have been rejected because it went to prove by parol, that a conveyance absolute on its face, was in fact *conditional.* *Hale v. Jewell & al.* 7 *Greenl.* 435.

*J. Shepley* and *D. Goodenow,* for the plaintiff, contended that *Tripp,* at the time of the attachment, had an interest in the land subject to be taken by his creditors. *Stat.* passed *Feb.* 28, 1829, *ch.* 431, gives to the creditor the right to attach " the estate, right, title and interest, which any person has " by virtue of a bond, or contract in writing, to a conveyance " of real estate, upon condition to be by him performed." The statute says nothing of the existence of the bond at the time of the attachment — it is the right and interest by virtue of the bond, which is liable. That right does not depend on the existence of the bond. If *Tripp* had lost the bond, or it had been burnt by accident, it is clear he would not have lost his rights under it; but they might have been enforced by him, or attached by his creditors under the provisions of this statute. *Barrett v. Thorndike,* 1 *Greenl.* 73; *Riggs v. Tayloe,* 9 *Wheat. R.* 483.

So the destroying, giving up, or cancelling a deed of real estate, does not divest the estate, if done fraudulently; but an attaching creditor or fair purchaser will hold as effectually as if no such transaction had taken place. *Marshall v. Fisk,* 6 *Mass.* 24; *Holbrook v. Tirrell,* 9 *Pick.* 108; *Davis et ux. v. Spooner,* 3 *Pick.* 284; *Hatch v. Hatch,* 9 *Mass.* 311; *Jackson, ex dem. Simmons v. Chase,* 2 *Johns. R.* 84; *Cutter v. Haven,* 8 *Pick.* 490; *Cutts v. U. States,* 1 *Gall.* 69. In this case the cancelling of the bond having been made to defraud creditors is to be treated as a nullity. *Meserve v. Dyer,* 4 *Greenl.* 52; *Howe v. Ward,* 4 *Greenl.* 195; *Goodwin v. Hubbard,* 15 *Mass.* 250; *Bullard v. Hinkley,* 6 *Greenl.* 289.

The statute authorising the attachment of equities of redemption is similar to this. Now if a debt honestly due be secured by a conveyance of real estate, and a bond given back, so as to make the conveyance a mortgage; and afterward the parties to defraud the creditors of the mortgagor, agree to destroy or give up the bond to be cancelled, does this destroy the equity of redemption? The creditor could not levy on the land, because the mortgage was legal and good. If in such case it destroys the equity of redemption as to creditors, they are without remedy. That it is not so appears by the case

before cited of *Jackson, ex dem. Simmons v. Chase,* 2 *Johns. R.* 84.

2. The sale of *Tripp's* right by virtue of the bond from *Stanley,* and its purchase by the plaintiff, gives him the right to maintain this action against *Wise.*

The *stat.* of 1829, *ch.* 431, before referred to, provides in 1*st sec.* that such right is to be sold in the same manner as equities of redemption of mortgaged property, and the sale is to have the same effect. The *stat.* relative to sale of equities of redemption, *ch.* 60, *sec.* 18, provides, " that all deeds made " and executed as aforesaid shall be as effectual to all intents " and purposes to convey the debtor's right in equity aforesaid " to the purchaser, his heirs and assigns, as if the same had " been made and executed by such debtor or debtors." What right then did the plaintiff obtain by his deed from the officer ? All the right which *Tripp* had by virtue of the bond from *Stanley,* and the right to the possession which was in *Tripp,* who had been in from *Dec.* 1825, to *July,* 1829. The deed gave a seizin to the plaintiff and the right to the possession, and is sufficient to enable him to maintain this suit against any one, who could not show a title to the land. *Stearns on Real Actions,* 192; *Porter v. Perkins,* 5 *Mass.* 236; *Goodwin v. Hubbard,* 15 *Mass.* 212; *Willington v. Gale,* 7 *Mass.* 138 ; *Porter v. Millet,* 9 *Mass.* 101.

The deed from *Stanley* to *Wise* having been found fraudulent as to the plaintiff, a creditor of *Tripp,* can be of no force in the present suit. The defendant's taking possession under it by his tenant, *Tripp,* can give him no rightful claim whatever, and he is a mere trespasser. *Wise,* to use the language of the Court in *Goodwin v. Hubbard,* " having no title in him- " self, shall not be permitted to quarrel with the title of the " plaintiff, who being in by process of law may maintain his pos- " session against all who have not a legal interest in the land."

The circumstance that *Wise* was in possession by *Tripp,* his tenant, at the time of the bringing the suit, cannot avail him. The plaintiff by the sheriff's deed had the same title as if *Tripp* himself had given the deed, and he therefore could not question the right of *Shaw* to the land. It is sufficient to put de-

fendant out, whether defeasible by *Stanley* or not.   A prior possession, for example, a possession from 1769 to 1776, has been held sufficient, against a person taking possession in 1795, and holding it till 1810, unless the last can show title.   *Smith v. Lorrillard,* 10 *Johns. R.* 338.

The remedy by bill in equity is only between the mortgagor and mortgagee, and does not concern an intruder or stranger.

3.  *Stanley* was a competent witness.   If interested at all it was for *Wise* the defendant, and not for the plaintiff.

That a party to a deed, not interested, may be a competent witness to prove it fraudulent, was decided in the case of *Inhbts. of Worcester v. Eaton,* 11 *Mass.* 368 ; and in numerous cases since.

The rule that parties to instruments shall not be permitted to impeach them, applies exclusively to *negotiable* paper.

*J. Holmes,* in reply.

The case shows that the officer, in the suit *Shaw v. Tripp,* returned an attachment of debtor's *right to redeem, &c.   That,* and that alone, was sold to the plaintiff.   The *stat.* of *Feb.* 1829, *ch.* 431, gives to the creditor, the right of attaching the right, title, and interest, which his debtor has, by virtue of a bond or contract in writing, *for the conveyance* of real estate, — not *for the redemption* of real estate.   Here is a manifest distinction, between cases arising under this statute, and cases of sale of equity of redemption under mortgages.   The sale, therefore, was not according to the statute ; — it is a sale of the right, title and interest of the debtor *in the land,* when it should have been of the right for a purchase under a bond, describing it. The plaintiff, therefore, took nothing by his purchase.

Again, the contract when made, was for the conveyance of real estate, which the parties could modify or annul at pleasure ; no law then existed giving a right of attaching obligee's rights. Now, if this statute is to be construed as affecting the rights existing under this contract, then it is retrospective and unconstitutional.   If it be retrospective, it affects *the contract,* and not merely *the remedy* upon it.   But it is contended that the law was not intended to operate on contracts already made.

Shaw *v.* Wise.

Then as to the title of *Tripp* in the land, it is contended that he never had any. It is not to be presumed that he was in claiming adversely to the true owner. He was in, first, under *Stanley,* and then under *Wise.* The plaintiff has admitted that *Wise* was in possession *by Tripp;* otherwise there could be no pretence for the maintenance of the action. *Wise* therefore is no mere stranger, as contended for by the counsel for plaintiff.

Then did any estate vest in *Tripp* by virtue of the obligation? The cases cited fully negative such an idea. What then could *Shaw* get by his purchase? Nothing. What had *Tripp* at the time of the attachment? If *Wise* at that time, had paid up the remainder of the sum due *Stanley,* then there was no right to attach — the title had become absolute, and the plaintiff should have attached the estate itself, and levied on it in the usual way. If it is a mortgage, or to be treated as such, then by payment of the sum due, the estate vested in *Tripp,* and there was no right *to redeem* left, which could have been attached. If it had not been redeemed, if a right to redeem still existed, then *Stanley* gets his pay twice, and that too, on his own testimony.

MELLEN C. J. delivered the opinion of the Court.

The only question in this cause, which it is necessary for us to decide, is, whether the facts disclosed on the report of the Judge, prove the seizin of the demandant on which he has counted. A person who is in possession of a piece of land, though having no other title than his possession, may maintain a writ of entry against any one who enters upon him and ousts him, without any title whatever. But as *Shaw* does not appear ever to have been in possession of the land in question, he cannot, on the above-mentioned principle of the common law, maintain the present action, even if the tenant has no title. The next question is, whether he can maintain it, in virtue of the right, title and interest which he purchased at auction of the officer, being the estate, right, title and interest which *Tripp* had, in virtue of *Stanley's* bond, to convey the real estate to him on performance of the condition of it. The statute of *February* 28, 1829, *ch.* 431, provides " that the estate, right, title and

" interest, which any person has by virtue of a bond or contract " in writing, to a conveyance of real estate, upon condition to " be by him performed, whether he be the original obligee or " assignee of the bond, shall be liable to be taken by attach- " ment, on mesne process or on execution:" the section goes on and provides that when such estate, right, title and interest is seised on execution, it shall be sold in the same manner as a right in equity of redeeming real estate mortgaged, and that the purchaser of such right or title shall have the same right of redeeming as the purchaser of an equity, and the same mode of process to obtain possession ; that is, by a bill in equity. *Stanley's* bond or obligation to *Tripp,* was a contract merely *personal,* and the estate, right, title and interest which *Tripp* had in virtue of that bond or obligation, was merely a *personal* right ; that is, a right to a conveyance of the land in question, on performance of the condition of the bond or obligation ; but the demandant, by his purchase and deed of the officer, acquir- ed no *seizin* of the land, for *Tripp* had none. It is perfectly clear that an obligee of *such* a bond, or contractee in *such* a con- tract, cannot, *merely as such,* maintain a writ of entry against any one, even a stranger ; but a mortgagor in possession can maintain such an action ; because, as to all persons, except the mortgagee and those claiming under him, he is considered as seised of the legal estate. The nature of the obligee's right to conveyance in virtue of such bond or contract, surely is not changed into real estate, because it is to be sold on execution in · the same manner as an equity of redemption. Suppose that all vessels were to be sold on execution, as equities of redemption are by law to be sold, they would still remain mere chattels. It is evident that the Legislature viewed the subject in the light in which we have placed it, by having provided a bill in equity as the process by means of which the obligee, or those claiming under him, may compel a specific performance ; that is, a con- veyance of a legal title to the owner of such personal contract, on performance of the conditions of the bond or contract. We are all clearly of opinion that the present action cannot be maintained. A nonsuit must be entered.